UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELIA M. NARANJO,

                    Plaintiff,                    Case No. 22-cv-10924

v.                                                Paul D. Borman
                                                  United States District Judge
BELFOR USA GROUP INC., *et al.*,

                    Defendants.
_____/

## OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF JUDGE ROBERT H. CLELAND'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ALL TWELVE COUNTS IN PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 40) AND (2) DENYING PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ECF NO. 44)

This action stems from Plaintiff Evelia M. Naranjo's employment with and

termination from her former employer, Defendant BELFOR USA Group, Inc.

("BELFOR"). Plaintiff alleges that she was mistreated by BELFOR and its current

and former employees Defendants Matt Endre, Dale Sailer, David Cripe, and

Michael Yellen (collectively "Defendants").

This case was originally before Judge Robert H. Cleland who dismissed all

twelve counts contained within Plaintiff's *pro se* Amended Complaint pursuant to

Fed R. Civ. P. 12(b)(6). This case was then reassigned to this Court.

Now before the Court are two motions, both of which have been fully briefed and are ready for adjudication: (1) Plaintiff's Motion for Reconsideration of Judge Cleland's Order granting Defendants' Motion to Dismiss (ECF No. 40) and (2) Plaintiff's Amended Motion for Leave to File a Second Amended Complaint (ECF No. 44).

The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of these matters; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court **DENIES** both of Plaintiff's motions.

## I. STATEMENT OF FACTS

The factual background to this case is accurately and fully set forth in Judge Cleland's Opinion and Order granting Defendants' Motion to Dismiss. (ECF No. 36, PageID.368–77). The Court briefly summarizes those facts immediately relevant to the present motions.

**A. Plaintiff's professional background and hiring process at BELFOR.**

Plaintiff has extensive background in insurance consulting and is especially skilled in estimate writing, which she claims allows her to generate millions of dollars in profits for her employers. (*Id*. at PageID.368).

In May 2019, Plaintiff interviewed for a position in BELFOR's Northbrook, Illinois office. (*Id*). Defendant Matt Endre, the General Manager of BELFOR-Northbrook, conducted Plaintiff's first two interviews, and Defendant Dale Sailer, the Regional Manager of BELFOR Northbrook, joined Defendant Endre for the final interview. (*Id*. at PageID.369).

At this final interview, Defendant Endre indicated that the pay for Plaintiff's position was $75,000 per year base salary: $60,000 in salary and $15,000 in advanced commission. (*Id*). Plaintiff's commission was based on her four primary responsibilities: estimating, project management, sales, and account management. (*Id*). Defendant Endre further explained that commissions were tied to Plaintiff meeting certain revenue benchmarks at the end of each commission pay period. (*Id*). Although Plaintiff attempted to negotiate a separate commission for marketing, Defendant Endre indicated that Plaintiff would not be responsible for marketing. (*Id*).

Plaintiff accepted Defendant's job offer and began working as an estimator at BELFOR on July 19, 2019. (*Id*). On August 15, 2019, Plaintiff was approached by Defendants Endre and Cripe who pressured her into signing an Employment Agreement she had never seen before. (*Id*. at PageID.369–70). The Employment Agreement stated, among other things, that Plaintiff's $15,000 in advanced commission could be reduced or taken back entirely if Plaintiff did not meet certain

revenue requirements. (*Id*. at PageID.370). Plaintiff initially objected to this provision, but Defendant Endre assured Plaintiff that her advanced commission would not be taken back. (*Id*).

## B. The sell-off.

On June 10, 2019, Defendant BEFLOR announced that that it was to undergo a $1 billion sell-off. (*Id*). Defendants Endre, Sailer, Cripe, and Yellen all stood to personally gain financially from this transaction. (*Id*. at PageID.371). Plaintiff alleges that, while the sell-off was occurring, Defendants were secretly conspiring "to make Plaintiff assist them in initiating, fulfilling, and/or completing the $[1] billion sell-off of BELFOR in order to not pay her for her Service and Value." (*Id*). Plaintiff became aware of this plan around the time she was terminated, in October 2021. (*Id*).

## C. Plaintiff's tenure at BELFOR and her termination.

Apart from her $15,000 in advanced commission, Plaintiff did not receive any additional commissions while Defendant Endre was BELFOR's General Manager. (*Id*). Plaintiff attributes this to Defendant Endre assigning the most lucrative commercial jobs to himself and his brother, while Plaintiff received only low-value residential jobs. (*Id*). Plaintiff further alleges that, as General Manager, Defendant Endre was not supposed to assign himself any work as an estimator. (*Id*).

4

Plaintiff also claims that in the Spring of 2021, Defendant Endre directed Plaintiff to market BELFOR to Plaintiff's multi-million-dollar insurance contacts. (*Id*). In response, Plaintiff reminded Defendant Endre that when she was hired, Defendant Endre specifically told Plaintiff that she would not be responsible for marketing. (*Id*. at PageID.371–72).

In retaliation for Plaintiff's refusal to market, Defendant Endre assigned Luis Lopez, a Project Manager, as estimator for high value commercial jobs to further deprive Plaintiff of commissions. (*Id*. at PageID.372). Defendant Endre also required Plaintiff to share her estimates, which she considers to be a proprietary trade secret, with Lopez and other Project Managers. (*Id*). Plaintiff claims that her estimates gave her the second highest profit margin in the region, but that she did not receive any commission for creating these profit margins. (*Id*).

In early 2021, Defendant Dale Sailer, who replaced Defendant Matt Endre as General Manager, informed Plaintiff that:

> 1) he would be reducing her base salary by reducing her supplemental advanced commission, 2) he would continue to assign Lopez as estimator [and] thus continue to divert commissions away from Plaintiff, and 3) that Plaintiff would not be eligible to earn concurrent commissions for her roles as estimator and salesperson; meaning, she could only earn one commission, either as estimator or salesperson.

(*Id*).

Plaintiff believed that these changes violated her employment contract as well as the promises made to her during the hiring process, and she filed a formal

complaint with Defendants' Human Resources Director, Teresa Franze. (*Id*. at PageID.373).

As the parties attempted to resolve this dispute, Plaintiff indicates that the following occurred:

> 1) Sailer stated that Plaintiff's salary could be better used elsewhere to raise revenue/profit; Plaintiff took this statement as a threat to fire Plaintiff if she does not market to her multi-million[-]dollar insurance contacts, 2) [Teresa] Franze stated that BELFOR is not doing anything wrong, 3) and Franze stated that Plaintiff is required to do as she is told, including marketing as Sailer is requiring of her and as it is written in the contract.

(*Id*).

Plaintiff maintains that her salary reduction was a ploy meant to pressure her into marketing BELFOR so that it could meet certain requirements needed to complete its sell-off. (*Id*). Plaintiff's request for a third-party mediator was denied. (*Id*).

On October 6, 2021, as the situation further deteriorated, Defendant Sailer called Plaintiff a "liar and a fraud" in an email to Defendant Cripe. (*Id*). Defendant Sailer claimed that Plaintiff had initially told him that she would do marketing, but that Plaintiff had since failed to do so. (*Id*. at PageID.374). Plaintiff believes that this email was meant to prime Defendant Yellen to approve Plaintiff's forthcoming termination. (*Id*).

After finding out about this email, Plaintiff submitted another formal complaint to Franze. (*Id*). Plaintiff explained that "the value of what BELFOR was doing to Plaintiff was in the millions, such as $20 million." (*Id*). Three weeks later Plaintiff was terminated, which Plaintiff claims was because BELFOR wanted to avoid paying her the $20 million Plaintiff believes she was owed. (*Id*).

## II. PROCEDURAL BACKGROUND

**A. Plaintiff's Amended Complaint and Defendants' Motion to Dismiss.**

On April 1, 2022, Plaintiff initiated this action by filing a *pro se* Complaint against Defendants in the Circuit Court for the County of Oakland. (ECF No. 1, PageID.2).

On April 29, 2022, Defendants removed this case to the Eastern District of Michigan based on federal question jurisdiction (ECF No. 1) where it was assigned to Judge Robert H. Cleland.

On November 8, 2022, Plaintiff filed an Amended Complaint. (ECF No. 27). This Amended Complaint stated twelve counts of relief all based on the facts describe above: Count I: Defamation *Per Se*; Count II: Promissory Estoppel/Detrimental Reliance; Count III: Fraudulent Concealment; Count IV: Misrepresentation; Count V: Misappropriation of Taken/Stolen Trade Secrets; Count VI: Conversion; Count VII: Hired Under False Pretenses, Misrepresentation,

Inducement, Unjust Enrichment/Quantum Meruit/Constructive Trust; Count VIII: Breach of Contract; Count IX: Non-Payment of Wages; Count X: Unpaid Commissions; Count XI: Retaliatory Discharge; Count XII: Vicarious Liability/Respondeat Superior.

On November 22, 2022, Defendants filed a Motion to Dismiss. (ECF No. 31). On September 6, 2023, Judge Cleland issued an Opinion and Order granting Defendant's Motion to Dismiss all counts included in Plaintiff's Amended Complaint. (ECF No. 36).

**B. Plaintiff's Motion for Reconsideration.**

On October 4, 2023, Plaintiff filed a Motion for Reconsideration of Judge Cleland's opinion granting Defendants' Motion to Dismiss. (ECF No. 38).

On October 6, 2023, this case was reassigned to this Court, and on October 10, 2023, this Court issued an Order striking Plaintiff's motion for failure to comply with Local Rule 5.1(a)(3) regarding font size. (ECF No. 39).

On October 17, 2023, Plaintiff refiled her Motion for Reconsideration. (ECF No. 40). On October 31, 2023, Defendants filed a Response (ECF No. 42), and on November 7, 2023, Plaintiff filed a Reply (ECF No. 43).

**C. Plaintiff's Amended Motion for Leave to File a Second Amended Complaint.**

On November 14, 2023, with her Motion for Reconsideration (ECF No. 40) still pending, Plaintiff filed an Amended Motion for Leave to File a Second

Amended Complaint. (ECF No. 44). Defendants filed a Response to this motion on November 28, 2023. (ECF No. 46). Plaintiff filed a Reply on December 12, 2023. (ECF No. 50).

On December 19, 2023, Defendants filed a Motion for Leave to File a Sur-Reply to this motion (ECF No. 51), which the Court denied. (ECF No. 53).

### III. PLAINTIFF'S MOTION FOR RECONSIDERATION (ECF No. 40)

In her first motion currently pending before the Court (ECF No. 40), Plaintiff seeks reconsideration of Judge Cleland's Opinion and Order granting Defendants' Motion to Dismiss. (ECF No. 36).

In his well-reasoned opinion, Judge Cleland held that eight of Plaintiff's twelve counts, Counts II, III, IV, V, VI, VII, VIII, and XII, must be dismissed because they are barred by the sixth-month statute of limitations included in Plaintiff's Employment Agreement with BELFOR. (*Id*. at PageID.379–86). Judge Cleland also provided grounds for dismissing each of these counts on their merits. (ECF No. 36, PageID.386–401).

Plaintiff's Motion for Reconsideration argues that, for various reasons, the Employment Agreement's six-month statute of limitations is inapplicable and that

these eight counts were improperly dismissed on their merits.[1] For the reasons that follow, this Court finds that Judge Cleland did not commit clear error, and Plaintiff's Motion for Reconsideration must be denied.

## A. Legal standard.

Local Rule 7.1 provides that "[p]arties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b)." A motion for reconsideration made pursuant to Rule 59(e) may be granted only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.' " *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

## B. Plaintiff's Motion for Reconsideration is untimely.

---

[1] Plaintiff only seeks reconsideration of Judge Cleland's dismissal of the eight counts listed above: Counts II, III, IV, V, VI, VII, VIII, and XII. As to the remaining four counts of Plaintiff's Amended Complaint, which Judge Cleland also dismissed, Plaintiff notes that she "will further address the[m] . . . in her Second Amended Complaint." (ECF No. 40, PageID.468). Therefore, the Court does not address them here.

Before discussing the merits of Plaintiff's Motion for Reconsideration, the Court notes that this motion must be denied because, as a procedural matter, it is untimely.

Fed. R. Civ. P. 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment." Judge Cleland entered final judgment for Defendants on September 7, 2023. (ECF No. 37). On October 4, 2023, with one day remaining in this 28-day period, Plaintiff filed her first Motion for Reconsideration. (ECF No. 38). Six days later, on October 10, 2023, the Court struck this motion because Plaintiff failed to comply with the Local Rules regarding font size. (ECF No. 39). On October 17, 2023, 40 days after Judge Cleland entered final judgment, Plaintiff filed her present, compliant, Motion for Reconsideration. (ECF No. 40).

Even if the Court were to toll the six days that elapsed between when Plaintiff filed her first noncompliant motion and when the Court struck that motion, Plaintiff's second Motion for Reconsideration would still have been filed six days after the deadline set forth in Fed. R. Civ. P. 59(e). Plaintiff's failure to satisfy this deadline is grounds to deny her motion. *See Lommen v. McIntyre*, 125 F. App'x 655,

659 (6th Cir. 2005) (holding that the district court did not abuse its discretion by denying the plaintiff's untimely motion for reconsideration).[2]

However, a court may consider an untimely motion for reconsideration as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). *Id.* "As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment." *Id.* (quoting *Lewis v. Alexander,* 987 F.2d 392, 396 (6th Cir.1993)).

Those reasons are:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

---

[2] Plaintiff erroneously claims that this Court's Order requiring Defendants to respond to Plaintiff's Motion for Reconsideration (ECF No. 41) also "permitted Plaintiff additional time to resubmit her filings" therefore excusing her from this 28-day deadline. (ECF No. 43, PageID.513). The Court's Order did no such thing, and the Federal Rules of Civil Procedure explicitly prohibit courts from extending the deadline to file motions pursuant to Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)").

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Defendants argue that, were the Court to consider this motion as a Rule 60(b) motion, Plaintiff's motion does not come within the first five grounds specified in Rule 60(b). (ECF No. 42, PageID.493). Therefore, Plaintiff must rely on the Rule 60(b)(6) catch-all under which relief may only be granted in "exceptional or extraordinary circumstances." *Lommen*, 125 F. App'x at 659 (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir.1989)). The Court disagrees.

In *Kemp v. United States*, the Supreme Court held that "a 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 596 U.S. 528, 533 (2022). Since Plaintiff's Motion for Reconsideration argues that Judge Cleland's opinion made several errors of law, Plaintiff's motion may be considered under Rule 60(b)(1).

However, even if the Court were to consider Plaintiff's untimely Motion for Reconsideration as a Motion for Relief from Judgement, Plaintiff's motion must still be denied because Judge Cleland made no mistakes of law.

## C. Plaintiff's claims are barred by the sixth-month statute of limitations.

Plaintiff's Employment Agreement provides for an abbreviated six-month statute of limitations period for claims relating to her employment or termination:

> *Abbreviated Statute of Limitations* – Employee agrees that in consideration for her continued employment, **she shall not commence any action or other legal proceeding against BELFOR** and/or its predecessors, successors, assigns, subsidiaries, parent(s), affiliates, and all past and present officers, directors, employees and agents, in their individual and representative capacities of the foregoing entities **relating to her employment or termination thereof more than six (6) months after the event complained of**, unless a shorter period is established by law, **and agrees to waive any statute of limitations to the contrary to the extent permitted by law.** Employee further understands and agrees that **the six (6) month period (or applicable shorter period) will not be extended for any reason, including continuing violations** . . .

(ECF No. 31-1, PageID.253) (emphasis added).

Plaintiff not only signed this agreement, but she also specifically initialed this statute of limitations provision to signify her acknowledgement and acceptance of the abbreviated limitations period. (*Id*).

Judge Cleland held that Counts II III, IV, V, VI, VII, VIII, and XII of Plaintiff's Amended Complaint were barred by this six-month statute of limitations because Plaintiff had learned of the conduct forming the bases of these claims by the middle of 2021 but did not initiate her lawsuit until April 29, 2022. (ECF No. 36, PageID.379–86).

Plaintiff's motion argues that, for various reasons, Judge Cleland erred by applying the statute of limitations to these claims. (ECF No. 40, PageID.450–62). The Court rejects all of Plaintiff's arguments.

### i. Unconscionability

Plaintiff first argues that the six-month statute of limitations does not bar her claims because the Employment Agreement is procedurally unconscionable and, thereby, unenforceable. (*Id*. at PageID.540).

As an initial matter, the Court finds that, because Plaintiff failed to raise an unconscionability argument in her Amended Complaint or in her opposition to Defendants' Motion to Dismiss, Plaintiff is barred from raising this new argument in her Motion for Reconsideration. *See Bank of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014) ("It is well-settled that 'parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued'") (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir.2007)). However, even if the Court were to consider the merits of Plaintiff's unconscionability argument, her argument still fails.

Under Illinois law[3], "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100, 854 N.E.2d

---

[3] Plaintiff contends that Illinois law governs her unconscionability argument since unconscionability is a question of contract formation, and Illinois is the state where the parties signed the Employment Agreement. (ECF No. 40, PageID.452). Defendants do not contest this point. (ECF No. 42, PageID.499).

607, 622 (2006). To determine whether an agreement is procedurally unconscionable courts consider "whether each party had the opportunity to understand the terms of the contract, whether important terms were 'hidden in a maze of fine print,' and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647, 242 Ill. 2d 48, 350 Ill. Dec. 847 (2011).

Plaintiff first argues that the Employment Agreement is unconscionable because it is a "form agreement" which contains the same terms for all BELFOR employees and offers no room for negotiation. (ECF No. 40, PageID.450–51). Construing Plaintiff's motion liberally, she appears to be arguing that the Employment Agreement is a contract of adhesion – "a contract submitted by one party to another on a take-it-or-leave-it basis, without any opportunity to negotiate its terms." *Martinell v. Navistar Int'l Corp.*, No. 11 C 8707, 2012 WL 2503964, at *3, (N.D. Ill. June 28, 2012). However, "a lack of opportunity to negotiate terms" on a form agreement, with nothing else, "will not create a[n] [unconscionable] contract of adhesion." *Ironbeam, Inc. v. Evert*, 417 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019). Rather, Illinois law states that "proposing an unfavorable contract provision on a take-it-or-leave-it basis can be procedurally unconscionable *only if some other factor is present*, such as the provision being hidden in fine print." *Copello v. Boehringer Ingelheim Pharm. Inc.*, 812 F. Supp. 2d 886, 895 (N.D. Ill. 2011) (emphasis added).

16

Plaintiff fails to establish that any other deceptive factor was present when she signed her Employment Agreement, so this argument fails as a matter of law. *See Ironbeam, Inc.*, 417 F. Supp. 3d at 1038 (the fact that there "was no negotiation or explanation" of the contract did not render it procedurally unconscionable because no other factor was present).

Plaintiff next argues that the Employment Agreement is procedurally unconscionable because Defendants presented her with the Employment Agreement's "onerous employment terms **only after** having already induced her to accept its offer and begin work." (ECF No. 40, PageID.452) (emphasis in original). This argument is equally unavailing.

To start, Illinois courts have routinely upheld employment agreements entered into after an employee began their employment as enforceable contracts. *See McRand, Inc. v. van Beelen*, 138 Ill. App. 3d 1045, 1055, 486 N.E.2d 1306, 1313 (1985) (upholding an agreement under these circumstances and collecting cases that have done the same).

Furthermore, Plaintiff again fails fundamentally to grasp that at its core, "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *In re Marriage of Woodrum*, 115 N.E.3d 1021, 1050 (Ill. App. 2018). Plaintiff offers no evidence to suggest that the statute of limitations

17

provision was so hidden or otherwise disguised that she did not realize what she was agreeing to. The opposite is true – the statute of limitations clause is the only clause in the Employment Agreement which Plaintiff independently initialed. (ECF No. 7-2, PageID.130).

Plaintiff can hardly claim this provision was hidden after she initialed it; therefore, her procedural unconscionability argument fails.

### ii. Ambiguity

Plaintiff next argues that her claims are not barred by the abbreviated statute of limitations because the Employment Agreement contains ambiguous terms and clauses which render it unenforceable. (ECF No. 40, PageID.452–53). Plaintiff takes specific issue with the following clause:

> Employment—Upon the terms set forth in this Agreement, BELFOR agrees to continue to employ Employee as the Estimator of its Chicago office and Employee hereby accepts such continued employment and agrees to perform such services as would be customary of the position or as otherwise reasonably **requested from time-to-time.**

(*Id*) (emphasis added by Plaintiff).

Plaintiff appears to be arguing that the phrase "from time-to-time" is overly ambiguous and thus invalidates the entirety of the Employment Agreement including the statute of limitations.

However, as Judge Cleland properly stated, "Plaintiff's ambiguity argument ignores the general rule of contract law that the failure of a distinct part of a contract

does not void valid, severable provisions." (ECF No. 36, PageID.385) (quoting *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 534 N.W.2d 217, 220 (Mich. Ct. App. 1995)) (internal quotation mark omitted). In this case, the parties specifically included a severability provision in the Employment Agreement, which stated that if "one or more of the provisions in this Agreement shall be held to be invalid, illegal or unenforceable for any reason, the invalidity, illegality or unenforceability of any provisions shall not affect any other provision hereto." (ECF No. 33-1, PageID.332).

Therefore, even if the Court assumes that the phrase "from time-to-time" is overly ambiguous, this ineffective provision would be severed from the Employment Agreement while the rest of the contract, including the abbreviated statute of limitations clause, would remain effective.

Next, Plaintiff notes that the second half of the Employment Agreement's severability provision states that, where possible, an "unenforceable provision [of this Agreement] may be modified by a court of competent jurisdiction in an attempt to give such provision the maximum effectiveness intended as originally drafted." (*Id*). Plaintiff argues that Judge Cleland ignored her "request for an injunction to amend the portions of the contract that are ambiguous and which BELFOR uses for its unjust enrichment." (ECF No. 40, PageID.454).

However, whether this request for an injunction was ignored is immaterial to the dismissal of Plaintiff's claims. Even if Judge Cleland were to amend an allegedly

ambiguous provision of the contract, this amendment would have no bearing on the contract's unambiguous six-month statute of limitations provision, and Plaintiff's claims would still be barred.

For all these reasons, Judge Cleland did not err in finding that the six-month statute of limitations was effective and required the dismissal of Plaintiff's claims.

### iii. The discovery rule, fraudulent concealment, and equitable tolling.

Plaintiff next argues that, even if the six-month statute of limitations provision is effective, it does not bar her claims because the statute of limitations on her claims should have only begun running in October 2021. (ECF No. 40, PageID.454).

As far as the Court can discern, Plaintiff's primary argument is that she only learned about BELFOR's planned $1 billion sell-off in October 2021 due to Defendants' fraudulently concealing it from her; therefore, under the discovery rule, October 2021 is when the six-month statute of limitations began. Judge Cleland rejected this same argument. (ECF No. 36, PageID.384–85). The Court agrees with Judge Cleland.

Under the discovery rule, "where a defendant's deceptive conduct [prevented a] plaintiff from even *knowing* that he or she has been defrauded," the statute of limitations "does not begin to run until the fraud is discovered." *Gabelli v. S.E.C.*, 568 U.S. 442, 449 (2013) (emphasis in original). Under Michigan law, a defendant's

fraud[4] only tolls a statute of limitations if the plaintiff can establish "that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996). A defendant's "[m]ere silence is insufficient." *Id*.

Judge Cleland held that Plaintiff's argument failed because she failed to "detail[] affirmative steps on Defendants' part to hide the sell-off from her. Rather if anything, Defendants simply did not mention the sell-off when interviewing Plaintiff." (ECF No. 36, PageID.385). He concluded that Defendant's mere silence regarding the sell-off was insufficient to delay the statute of limitations' running. (*Id*).

Plaintiff's motion again fails to identify any specific step Defendants took to hide the sell-off from Plaintiff. Instead, she relies on broad statements like: "[Defendants] trick[ed] and deceive[d] for their own unjust enrichment" and "[Defendants committed] torts, lies, broken promises, false pretenses, misrepresentations, inducements, fraudulent concealments." (ECF No. 40, PageID.454). These conclusory allegations do not pass muster under Rule 12(b)(6), nor do they establish clear error.

---

[4] Plaintiff appears to argue the discovery rule and fraudulent concealment as independent bases for finding that the six-month statute of limitations began to run in October 2021. However, both doctrines rely on deceptive conduct taken by the defendants to conceal their fraudulent actions, so the Court can analyze them together.

Finally, Plaintiff "appeals to equitable tolling to establish the start of the [statute of limitations] timeline to October 2021." (ECF No. 40, PageID.455). Plaintiff did not raise the doctrine of equitable tolling in response to Defendants' Motion to Dismiss; therefore, Plaintiff cannot properly raise it now in her Motion for Reconsideration. *See Donaldson v. Dejoy*, 2022 WL 9446819, at *1 (E.D. Mich. Oct. 14, 2022) (Berg, J.) ("Rule 59(e) cannot be used to raise new arguments"). This argument also fails on its merits.

"The doctrine of equitable tolling allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560–61 (6th Cir.2000)) (internal quotation mark omitted). "[T]he doctrine of equitable tolling is used sparingly by federal courts." *Id*.

Here, equitable tolling is not warranted because Plaintiff's claimed ignorance of BELFOR's planned sell-off was not unavoidable. As Judge Cleland already noted, "Plaintiff herself present[ed] an internet article published June 10, 2019 that discusses the [BELFOR] sale." (ECF No. 36, PageID.384). The existence of this article establishes that the BELFOR sale was public knowledge well-before October 2021. Accordingly, Plaintiff's ignorance of it was not beyond her control, and Plaintiff again fails to establish clear error.

22

**D. Plaintiff's claims were properly dismissed on their merits.**

Judge Cleland further held that even if one assumed, *arguendo*, that the Employment Agreement's ambiguity was so pervasive as to wholly invalidate the contract, there were alternative reasons beyond the six-month statute of limitations for dismissing Counts II, III, IV, V, VI, VII, VIII, and XII. (ECF No. 36, PageID.386). Plaintiff's Motion for Reconsideration challenges these alternative reasons for dismissal as well.

Most of Plaintiff's arguments are perfunctory and improperly reargue the same points Judge Cleland already properly rejected. However, in the interest of thoroughness, the Court addresses each of Plaintiff's arguments below.

*i. Count II: Promissory Estoppel/Detrimental Reliance*

Count II of Plaintiff's First Amended Complaint states claims of promissory estoppel under Michigan and Illinois common law. (ECF No. 27, PageID.187). While the elements of the claim vary slightly between the two states, at the heart of each claim is an unambiguous promise made by the promisor upon which the promisee reasonably relied on to her detriment[5].

---

[5] *See Gason v. Dow Corning Corp.*, 674 F. App'x 551, 558–59 (6th Cir. 2017) ("a claim for promissory estoppel [in Michigan] has for elements: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided"); *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (under Illinois law, the elements are: "(1) defendants made

Judge Cleland noted that while Plaintiff's pleadings are somewhat scattershot, Plaintiff identifies three promises made to her by Defendant Endre: (1) that she would receive a base salary of $75,000 with a four-point cumulative commission; (2) that she would receive a guaranteed estimator commission if Plaintiff reached the minimum contract value; and (3) that the BELFOR-Northbrook office generates approximately $6,000,000 in annual revenue. (ECF No. 36, PageID.387–88). Based on these promises, and by "[c]onstruing Plaintiff's documents liberally, [Judge Cleland] gather[ed] that the gist of Plaintiff's alleged injury [was] the $15,000.00 cut to her salary when her advanced commission was taken away." (*Id*. PageID.388).

However, Judge Cleland found that Plaintiff had failed to establish that Defendants had made an unambiguous promise to pay her the $15,000 and, therefore, her promissory estoppel claim must be dismissed. (*Id*). This Court agrees with Judge Cleland. Judge Cleland reasoned that:

> [Plaintiff's] own evidence reflects a lack of clarity on whether Plaintiff would be paid the $15,000.00 "advanced commission," if she did not meet basic commission requirements. When Plaintiff objected to [the] commission claw back provision in the Employment Agreement, she contacted Defendant Endre. Defendant Endre indicated, "I have never heard of anyone having to pay back. I agree but I never saw the

_____

an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff[']s reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment").

[contract] language nor would I ever ask for it back." Plaintiff responded, "Ok, thank you. I'll take that as a confirmation. If BELFOR comes after me, I'll just tell them 'Matt said no.'" Defendant Endre then forwarded that exchange to Defendant Cripe stating, "See below. I assume we usually don't ask for it back." Defendant Cripe responded, "I have yet to ever do that. You can just tell her we have strong contracts just in case but we treat people fairly." Defendant Endre then forwarded Defendant Cripe's response to Plaintiff, to which she replied, "Thank you, Matt. I appreciate Dave's response. I will interpret Dave's 'we treat people fairly' as: BELFOR will not require Evelia to 'pay back' said agreed commission . . .

(*Id*) (internal citations omitted).

Plaintiff first argues that Judge Cleland erred "in declaring Endre's unambiguous promises as ambiguous because of Cripe's comment." (ECF No. 40, PageID.463). Plaintiff fails to adequately describe why this declaration was erroneous beyond this conclusory statement, and this Court agrees with Judge Cleland. As Judge Cleland points out, Defendant Cripe's comment and Plaintiff's response to it, shows that Defendant Endre's alleged promise that Plaintiff's $15,000 advanced commission could not be clawed-back was not sufficiently unambiguous to support a promissory estoppel claim.

Plaintiff next argues that Judge Cleland "err[ed] in limiting the injury to the reduction of the $15,000 advanced commission." (*Id*. at PageID.464). Plaintiff explains that:

There are other financial factors that were promised and were not paid to Plaintiff, which the Court overlooks, including, but not limited to, the unambiguous promise of 4-point guaranteed cumulative

25

commission based on a portion of $6 million annual revenue, which Plaintiff calculates to about $3 million in unpaid promised commission which the contract allows and which Sailer assured Plaintiff she could earn based on his interpretation of the contact—at that time. Other finances lost include, but are not limited to, missing out on a job with base salary and commission working for a competitor, a job Plaintiff lost out in order to accept the job with BELFOR, which she was lured into with false pretense, misrepresentation, inducement, and false promises. And most significantly, Plaintiff was not given a cut on the $1 billion selloff/value of BELFOR . . .

(*Id*).

However, Plaintiff again fails to point to a specific unambiguous promise pled in her Amended Complaint upon which she relied on that caused her to miss out on this money she claims she is entitled too. Without an unambiguous promise there can be no promissory estoppel. Judge Cleland did not err in dismissing Plaintiff's claim.

### ii. Count III: Fraudulent Concealment

Count III of Plaintiff's Amended Complaint states claims for fraudulent concealment under both Michigan and Illinois law. (ECF No. 27, PageID.188). Plaintiff alleges that Defendants conspired to make and then break promises to Plaintiff to unjustly enrich themselves by completing the $1 billion BELFOR sell-off. (*Id*. at PageID.188–89).

Under Michigan law, to state a claim for fraudulent concealment the Plaintiff must establish:

26

> (1) a material representation which is false; (2) known by defendant to
> be false, or made recklessly without knowledge of its truth or falsity;
> (3) that defendant intended plaintiff to rely upon the representation; (4)
> that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered
> injury.

*McMullen v. Joldersma*, 435 N.W.2d 428, 430 (1988).

Under Illinois law, fraudulent concealment requires that:

> (1) the defendant concealed a material fact under circumstances that
> created a duty to speak; (2) the defendant intended to induce a false
> belief; (3) the plaintiff could not have discovered the truth through
> reasonable inquiry or inspection, or was prevented from making a
> reasonable inquiry or inspection, and justifiably relied upon the
> defendant's silence as a representation that the fact did not exist; (4) the
> concealed information was such that the plaintiff would have acted
> differently had he or she been aware of it; and (5) the plaintiff's reliance
> resulted in damages.

*Bauer v. Giannis*, 834 N.E.2d 952, 957–58 (Ill. App. Ct. 2005).

Judge Cleland held that Plaintiff's fraudulent concealment claims must be dismissed because Plaintiff's "Amended Complaint fails to articulate any deception on Defendants' part that would support [her] claim." (ECF No. 36, PageID.390). This Court agrees.

In her motion, Plaintiff argues that Defendants deceived her by failing to inform her about the planned BELFOR sell-off, which would have allowed her to negotiate a commission based on this transaction. (ECF No. 40, PageID.464–65). However, Judge Cleland had already addressed this point in his opinion: "Plaintiff fails to demonstrate that she was entitled to [] information [about the sell-off] in any way or truly injured by not knowing it." (ECF No. 36, PageID.390). He explained

27

that while "Plaintiff very well could have wanted to negotiate for a piece of the sell-off pie … a mere desire does not translate to a legal right." (*Id*).

Plaintiff's motion again fails to state a valid legal basis for why she was entitled to information about the sell-off or compensation based on its successful completion. Plaintiff merely asserts, without citation to any relevant authority, that she "was entitled to [this] information" and that it was "a matter of law and duty of Defendant to inform Plaintiff" about the sell-off. (ECF No. 40, PageID.465). This rehashing of conclusory arguments already properly rejected by Judge Cleland does not establish clear error.

### iii. Count IV: Misrepresentation

Count IV of Plaintiff's Amended Complaint states a claim for misrepresentation under both Michigan and Illinois law. (ECF No. 27, PageID.188). Judge Cleland, construing Plaintiff's complaint liberally, presumed that Plaintiff's claims were for fraudulent misrepresentation. (ECF No. 36, PageID.391).

The elements of fraudulent misrepresentation are essentially the same under Michigan and Illinois law. Under both, Plaintiff must establish that: (1) Defendants made a material representation; (2) the representation was false; (3) Defendants knew it was false or acted with reckless disregard to the fact that it might be false;

(4) Defendants intended for Plaintiff to act on the representation; (5) Plaintiff did act on the representation; and (6) Plaintiff was damaged as a result.[6]

Judge Cleland identified two misrepresentations that Plaintiff alleges were made to her by Defendants: (1) that she would earn $75,000 per year with a guaranteed 4-point cumulative commission and (2) that Plaintiff was made to believe that she would be earning a commission based on BELFOR's $6 million in annual revenue from its estimator jobs. (ECF No. 36, PageID.391–92). Judge Cleland held that neither of these alleged misrepresentations were concrete enough to support a claim for fraudulent misrepresentation. (*Id*. at PageID.392). This Court agrees with Judge Cleland.

Plaintiff's motion appears to focus on the latter misrepresentation – that Defendants led her "to believe she would be earning commission on a significant portion of the $6 million annual revenue when he told her that there was only one other Estimator. Two Estimators total for $6 million/year revenue." (ECF No. 40, PageID.466) Plaintiff contends that, during her interview, Defendant "Endre inquired of Plaintiff of her estimating skills on large commercial jobs," which led her "to believe that Endre would be giving her commercial large jobs and thereby a significant portion[] of the $6 million." (*Id*).

---

[6] *See Bergen v. Baker*, 691 N.W.2d 770, 774 (Mich. Ct. App. 2004); *Simmons v. Campion*, 991 N.E.2d 924, 932 (Ill. App. Ct. 2013).

However, Judge Cleland already rejected this argument:

> To the extent that Plaintiff contends Defendants misrepresented her commission-based earning potential, she fails to establish that she was promised certain estimator jobs. Rather, the evidence presented at this stage in the proceedings shows that Defendant Endre indicated only that he was in charge of assigning estimator jobs, which itself prefigures that Plaintiff would not be receiving all available estimator jobs involved in the $6,000,000.00 revenue stream for the BELFOR-Northbrook office.

(ECF No. 36, PageID.392).

Plaintiff's motion fails to adequately explain why Judge Cleland's analysis was in error. Instead, she merely asserts that "[Defendant] Endre promised Plaintiff large commercial jobs by making her believe she would get them." (ECF No. 40, PageID.466). This circular reasoning fails to establish error. This Court agrees with Judge Cleland.

### iv. Count V: Misappropriation of Taken/Stolen Trade Secrets and Count VI: Conversion

Plaintiff does not contest Judge Cleland's alternative reasons for dismissing both her Misappropriation of Taken/Stolen Trade Secrets claim (Count V) and her Conversion claim (Count VI). Her motion notes only that "[f]or brevity, Plaintiff doesn't address these 2 counts at this time." (ECF No. 40, PageID.467).

### v. Count VII: Hired Under False Pretenses, Misrepresentation, Inducement; Unjust Enrichment/Quantum Meruit/Constructive Trust

Count VII of Plaintiff's Amended Complaint states a blend of claims relating to Plaintiff's hiring at BELFOR and the manner in which Defendants unjustly enriched themselves at Plaintiff's expense. (ECF No. 27, PageID.191). Plaintiff's present motion appears to only seek reconsideration of Judge Cleland's dismissal of the unjust enrichment claim included in this count. (ECF No. 40, PageID.467–68).

The elements of unjust enrichment are essentially the same under Illinois and Michigan law. Under both, the plaintiff must establish that the defendant was enriched by some benefit derived from the plaintiff, which the defendant, for equitable reasons, cannot be allowed to maintain.[7]

Judge Cleland found that:

> The gist of Plaintiff's unjust enrichment claim is that she should have been compensated for (1) certain estimator jobs that were not given to her, (2) her high-profit-margin-generating estimate writing skills, and (3) her contribution to the success of the sell-off. But as already indicated in the court's analysis of Plaintiff's misrepresentation claim, Plaintiff was not promised particular estimator jobs. Nor can she assert ownership over commissions for jobs not given to her merely because her Xactimate writing methodology may have been used to generate said commissions. Though Plaintiff insists that her Xactimate estimate writing skills were her valuable trade secret, as discussed in her misappropriation of trade secrets claim, she has alleged nothing in the form of safeguarding this secret but instead appears to have given up her methodology when asked to by Defendant Endre. The fact that Plaintiff is realizing in hindsight that she should have negotiated some form of additional compensation for her Xactimate methodology does

---

[7] *See Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

not now entitle her recompense. Rather, she agreed to work as an estimator for Defendants at a base salary of $60,000.00. She was paid that figure. Moreover, as noted repeatedly by this court, Plaintiff has alleged nothing establishing any sort of right to part of the sell-off, which was publicly known as early as June of 2019—before Plaintiff agreed to work for Defendants.

(ECF No. 36, PageID.399).

Accordingly, Judge Cleland held that "Defendants did not unjustly retain a benefit to Plaintiff's detriment for which they were not already appropriately compensating Plaintiff" and dismissed this claim. (*Id.* at PageID.399–400).

Plaintiff's motion states only that "Unjust Enrichment took place in various forms. Defendants retained money and benefits that belonged to Plaintiff and which were due to Plaintiff by promise and/or by contract. As already addressed before, the unpaid compensations/commissions is in the millions of dollars." (ECF No. 40, PageID.468).

This argument is perfunctory and fails completely to engage with Judge Cleland's thoughtful analysis or otherwise establish clear error. This Court agrees with Judge Cleland.

### vi. Count VIII: Breach of Contract

Count VIII of Plaintiff's Amended Complaint states a claim for breach of contract because of Defendants' alleged "reduction of Plaintiff's base salary of $75,000/year, nonpayment of commissions, diverted commissions, and

requirements to make Plaintiff market to her multi-million dollar insurance contacts." (ECF No. 27, PageID.191–92).

"The elements of a breach of contract claim under Michigan law are as follows: '(1) a contract between the parties, (2) the terms of the contract require performance of a certain action, (3) a breach, and (4) the breach caused injury to the other party.' " *Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1041 (E.D. Mich. 2013) (quoting *Synthes Spine Co., L.P. v. Calvert*, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003)).

In dismissing this claim, Judge Cleland noted that if one assumes, as Plaintiff would like this Court to do, that the Employment Agreement is so ambiguous as be an invalid contract, then Plaintiff's breach of contract claim fails under element one since there would be no valid contract between the parties. (ECF No. 36, PageID.400). If, on the other hand, one accepts that the Employment Agreement is enforceable, then any breach of contract claim would be barred by the contract's statute of limitations. (*Id*). This Court agrees with Judge Cleland.

Plaintiff's motion does not explain why Judge Cleland's conclusion was erroneous. Instead, Plaintiff merely states that "this count is sufficient in law." (ECF No. 40, PageID.468). This perfunctory assertion fails to identify clear error.

### vii. Count XII:  Vicarious Liability/Respondeat Superior

Count XII of Plaintiff's Amended Complaint states a claim for vicarious liability under a theory of *respondeat superior* against Defendants BELFOR Northbrook and BELFOR USA under both Michigan and Illinois state law. (ECF No. 27, PageID.196). *Respondeat superior* "is not an independent cause of action" under Michigan law[8], but is viable as a standalone cause of action in Illinois. Under Illinois law, "[t]he doctrine of *respondeat superior* allows an injured party to hold a principal vicariously liable for the conduct of his or her agent." *Oliveira-Brooks v. Re/Max Int'l, Inc.*, 372 Ill. App. 3d 127, 134, (2007) (citing *Moy v. County of Cook,* 159 Ill. 2d 519, 523 (1994)).

Judge Cleland held that Plaintiff's *respondeat superior* claim must be dismissed because, to support such a claim, "there must be an underlying injury" but "Plaintiff has failed to articulate an injury in Counts II, III, VI, V, VI, VII, and VIII," upon which to attach vicarious liability in Count XII. (ECF No. 36, PageID.400–01).

Plaintiff's motion fails to describe an underlying injury, which Judge Cleland overlooked. Instead, Plaintiff merely states that she "addressed above her injuries and facts and allegations, and the Court's error in not applying the standard for a [motion to dismiss]" and that "this count is sufficient in law under Illinois." (ECF

---

[8] *Arora v. Henry Ford Health Sys.*, 2017 WL 4119946, at *6 (E.D. Mich. Sept. 18, 2017), *aff'd*, 2018 WL 3760888 (6th Cir. July 9, 2018)

No. 40, at PageID.468). These vague allegations and conclusory statements fail to establish clear error. This Court agrees with Judge Cleland.

**E. Conclusion**

Plaintiff's Motion for Reconsideration is deficient both procedurally and on its merits. Plaintiff's motion was untimely filed, and it alternates between inappropriately rearguing arguments that were already properly rejected and improperly raising new ones. Plaintiff fails to establish that Judge Cleland made any errors of law in holding that her claims were barred both by the Employment Agreement's abbreviated statute of limitations as well as for the alternative reasons discusses in his opinion. For these reasons, Plaintiff's Motion for Reconsideration (ECF No. 40) is **DENIED**.

## IV. PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ECF No. 44).

Plaintiff's second motion currently before the Court is her Amended Motion for Leave to file a Second Amended Complaint. (ECF No. 44). Plaintiff seeks "leave in order to more properly address her complaint in light of new information which will add a new Defendant to the complaint regarding all her past/existing and new counts." (ECF No. 44, PageID.517). Plaintiff filed this motion after Judge Cleland issued his opinion granting Defendants' Motion to Dismiss (ECF No. 36) and after he issued a Judgment closing the case. (ECF No. 37). For the reasons set forth below, Plaintiff's motion is **DENIED**.

### A. Plaintiff's motion relies on an incorrect legal standard.

The Federal Rules of Civil Procedure state that, generally, "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff believes that this permissive standard governs her present motion. (ECF No. 44, PageID.518). However, "when a Rule 15 motion comes *after* a judgment against the plaintiff, that is a different story." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (emphasis in original). In these instances, the party seeking amendment "shoulder[s] a heavier burden" and must "meet the requirements for reopening a case established by Rules 59 or 60." *Id*. at 616 (citing *In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 624 (6th Cir.2008)).

36

Plaintiff's motion was filed after Judge Cleland granted Defendants' Motion to Dismiss; therefore, this higher standard governs Plaintiff's motion to amend. Since the Court has already found that Plaintiff has failed to meet the requirements of reopening her case under either Rule 59 or Rule 60[9], Plaintiff cannot meet this standard.

**B. Plaintiff's motion rests on the flawed assumption that Judge Cleland denied some of her claims without prejudice.**

In addition to misstating the relevant legal standard applicable to this motion, Plaintiff's motion rests on the flawed assumption that Judge Cleland denied some of her claims without prejudice.

Judge Cleland found that the abbreviated six-month statute of limitations in Plaintiff's Employment Agreement with BELFOR applied to Counts II, III, IV, V, VI, VII, VIII, and XII of Plaintiff's Amended Complaint. Therefore, Judge Cleland dismissed those claims with prejudice. (ECF No. 36, PageID.386).

Judge Cleland dismissed Plaintiff's remaining claims, Counts I, IX, X, and XI, under the Rule 12(b)(6) standard as well, but his opinion did not explicitly state whether these counts were to be dismissed with or without prejudice. (*Id*. at PageID.401–12). Plaintiff mistakenly takes this to mean that "Counts I, IX, X, and

---

[9] *See supra* Section III at Page 9.

XI were not dismissed with prejudice" and that these counts "are amenable to further amendment." (ECF No. 50, PageID.632–33).

It is well settled that "[u]nder Federal Rule of Civil Procedure 41(b), a dismissal under Rule 12(b)(6) operates as an adjudication on the merits unless the dismissal order states otherwise. And an adjudication on the merits is synonymous with a dismissal with prejudice." *Crone-Schierloh v. Hammock*, 2013 WL 12123903, at *3 (S.D. Ohio May 22, 2013) (quoting *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001)) (internal quotation marks omitted); *see also Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988) (emphasis in original) ("It is well established that the sustaining of a motion to dismiss for insufficiency of the complaint serves as an adjudication on the merits *unless* the court specifies otherwise") (emphasis in original).

Accordingly, "a dismissal order pursuant to Rule 12(b)(6) that fails to state that it is without prejudice or that it is not on the merits is automatically categorized as a dismissal with prejudice or on the merits." *Moore v. Cent. Ohio Drug Enf't Task Force*, 2018 WL 1173041, at *3 (S.D. Ohio Mar. 6, 2018)[10].

Since Judge Cleland's opinion does not state that Counts I, IX, X, and XI, were dismissed without prejudice, these counts are presumed to have been

[10] *Report and recommendation adopted sub nom. Moore v. Cent. Ohio Drug Enf't Task Force*, No. 2:16-CV-987, 2018 WL 1966153 (S.D. Ohio Apr. 26, 2018)

38

dismissed, on their merits, with prejudice. Therefore, and because Plaintiff has failed to convince this Court that her claims merit relitigating under Rules 59 or 60, the Court **DENIES** Plaintiff's Amended Motion for Leave to File a Second Amended Complaint. (ECF No. 44).

## VI. CONCLUSION

In conclusion and for the reasons set forth above, the Court **ORDERS** the following:

(1) Plaintiff's Motion for Reconsideration of Judge Cleland's Opinion and Order granting Defendants' Motion to Dismiss (ECF No. 40) is **DENIED.**

(2) Plaintiff's Amended Motion for Leave to File a Second Amended Complaint (ECF No. 44) is **DENIED**.

**SO ORDERED.**

Dated: May 7, 2024                                    s/ Paul D. Borman
                                                      Paul D. Borman
                                                      United States District Judge